## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CORRY D. SORRELL,

   *Plaintiff*,

 v.            Civil Action No. 15-2004 (TJK)

PAIGE INDUSTRIAL SERVICES, INC.,

   *Defendant*.

## <u>MEMORANDUM OPINION</u>

Plaintiff Corry Sorrell contends that his former employer improperly paid him as a laborer instead of an electrician, assigned him to lower-paying jobs, drug tested him too much, and failed to provide him with certain employment documentation. He alleges these actions stemmed from discrimination and retaliation based on his age and race in violation of Title VII, Section 1981, the Age Discrimination in Employment Act, and the District of Columbia Human Rights Act. His former employer moved for summary judgment, and Sorrell cross-moved for partial summary judgment. For the reasons explained below, the Court will grant his employer's motion, deny Sorrell's, and enter judgment for his former employer.

## I. Background

Paige Industrial Services, Inc. ("Paige") provides electrical and construction services throughout the District of Columbia, Maryland, and Virginia. ECF No. 31-2 (Def.'s SMF) ¶ 1. The company provides services on both public- and private-sector projects, but most of its work is for federal, state, and local governments. *Id.* ¶ 7. Paige employees are assigned a base hourly pay rate when they are hired. *Id.* ¶ 13. On private jobs, employees earn their base rate. *Id.* ¶ 14. On public projects, however, the relevant government entity sets pay, called a "scale rate," and

an employee is paid the higher of his base rate and scale rate.  *Id.* ¶¶ 10, 15.

Sorrell started working at Paige in October 2010, when he was 41 years old.  *Id.* Originally, Paige hired Sorrell as a laborer in its construction division, where his duties consisted of carrying drywall to worksites, removing scrap drywall, and sweeping floors.  *Id.* ¶ 38.  His base rate was $15.00 per hour.  *Id.* ¶ 35.  In May 2011, he started working as a laborer in Paige's electrical division.  *Id.* ¶ 40.  A year later, Sorrell received a raise to $17.00 per hour because Paige's vice president, Frederick Gramlich, had heard he was doing good work.  *Id.* ¶ 41–42.  In 2013, Sorrell enrolled in electrical courses at Prince George's Community College, and Paige reimbursed him for them.  *Id.* ¶ 52.  Later that same year, Sorrell enrolled in an apprenticeship program through Independent Electrical Contractors (IEC).  *Id.* ¶ 53.  Gramlich encouraged Sorrell to apply, and Paige sponsored his application and paid the program fees.  *Id.* ¶¶ 53–56.

Before Sorrell enrolled in the apprenticeship, Paige classified him as a laborer, rather than an electrician, on all federal projects.  *Id.* ¶¶ 44–51.  After Sorrell entered the apprenticeship program, under the contract that both Sorrell and Paige signed, Paige paid Sorrell a percentage of the electrician wage on federal projects.  *Id.* ¶ 63.  The following year, in mid-to-late July 2014, Sorrell became dissatisfied with his pay and complained to his supervisor, Jeffrey Carney.  ECF No. 31-3 (Sorrell Tr. A) at 224:18–225:20.  On July 28, 2014, Sorrell sent a letter to Gramlich, making a similar complaint.  *See* ECF No. 31-15.  Gramlich responded by telling Sorrell that Paige was reviewing his rate.  *Id.*

Sorrell resigned from Paige on August 15, 2014, just a few weeks later.  Def.'s SMF ¶ 67.  And four days after that, Sorrell called Paige and spoke with Jennifer DeMarr, an administrative assistant.  *See* ECF No. 31-16.  Sorrell requested that Paige email him his electrical work history so that he could take his journeyman electrician test.  *Id.*  Robert Brown,

2

Paige's outside accountant, fielded the request from DeMarr, but advised her that it could wait until after an upcoming meeting. *Id.* Paige never responded to Sorrell's request, but Sorrell eventually obtained his apprenticeship work history from IEC. *See* Sorrell Tr. A at 248:6–11. Soon after, he began working for another contractor. *Id.* at 165:11–166:8.

On August 27, 2014, Sorrell filed an administrative complaint alleging discrimination with the Baltimore office of the Equal Employment Opportunity Commission (EEOC) and flagged it to be cross-filed with the Maryland Commission on Civil Rights (MCCR). ECF No. 31-17. After the MCCR denied his claim, ECF No. 31-18, and the EEOC issued a right-to-sue letter, ECF No. 35 at 40, Sorrell filed this lawsuit on September 8, 2015, in the Superior Court for the District of Columbia, alleging discrimination on the basis of race and age, and retaliation, under Title VII, Section 1981, the Age Discrimination in Employment Act (ADEA), and the District of Columbia Human Rights Act (DCHRA). ECF No. 1. Paige removed the case, *id.*, and later moved for summary judgment, ECF No. 31. Sorrell filed an opposition, as well as a cross-motion for partial summary judgment directed at Paige's purported justification for his salary. ECF Nos. 35–37.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). To survive summary judgment, a plaintiff must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (citations omitted). "Importantly, while summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 17 (D.D.C. 2009) (cleaned up).

## III.    Analysis

As explained below, the Court finds that Paige is entitled to summary judgment on all counts. First, Sorrell did not oppose Paige's motion as it relates to his ADEA and DCHRA age discrimination and retaliation claims, and in any event, there is no evidence that Paige discriminated against Sorrell because of his age or that it retaliated against him for engaging in age-related protected activity. Second, summary judgment is appropriate on Sorrell's DCHRA race and age discrimination claims because the statute of limitations bars those claims. Third, Paige is entitled to judgment on Sorrell's Title VII and Section 1981 race discrimination claims because no reasonable jury could conclude that Paige's legitimate reasons for paying Sorrell as it did—based on his experience and skill level—were pretextual and that the real reason was discrimination. And fourth, summary judgment is warranted for Paige on Sorrell's Title VII, Section 1981, and DCHRA retaliation claims because Sorrell has not shown that Paige's actions were adverse or that Paige took those actions because of his protected activity.

### A.    Age Discrimination and Retaliation Claims (Counts 3, 4, and 7)

The ADEA and DCHRA prohibit discrimination based on a person's age and retaliation for related protected activity. 29 U.S.C. § 623(a)(1), (d); D.C. Code §§ 2-1402.11(a)(1)(A),

2-1402.61(a).  To establish a discrimination or retaliation claim, a plaintiff may rely on direct evidence of discriminatory or retaliatory intent, as well as indirect evidence from which such motive for the challenged employment decision could be inferred.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).  When a plaintiff offers no direct evidence of discrimination or retaliation, the claim is subject to the *McDonnell Douglas* burden-shifting framework. *DeJesus v. WP Co.*, 841 F.3d 527, 532 (D.C. Cir. 2016) (ADEA); *Dougherty v. Cable News Network*, 396 F. Supp. 3d 84, 100–01 (D.D.C. 2019) (DCHRA).  Under that framework, a plaintiff bears the initial burden to establish a prima facie case of discrimination by coming forward with evidence showing that he (i) was 40 or older, and so falls within the ADEA's protective reach; (ii) was otherwise qualified for the position in which he was working; (iii) suffered an adverse employment action; and (iv) was "disadvantaged in favor of a younger person."  *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999).  In the retaliation context, the plaintiff may establish a prima facie case by showing that he (i) engaged in protected activity; (ii) suffered an adverse employment action; and (iii) a causal link connects the protected activity and adverse action.  *Moss v. Hayden*, 18-cv-470 (JEB), 2020 WL 4001467, at *2 (D.D.C. July 15, 2020).

Sorrell did not oppose Paige's motion for summary judgment as to his age discrimination and retaliation claims, or otherwise try to put forward any evidence supporting a prima facie case.  Thus, the Court treats the facts proffered by Paige as conceded.  *See Rogers v. Washington Metro. Area Transit Auth.*, 214 F. Supp. 3d 10, 11 (D.D.C. 2016) (citing *Grimes v. District of Columbia*, 794 F.3d 83, 92 (D.C. Cir. 2015)).  After considering those facts, the Court finds that Paige has carried its burden to show it is entitled to summary judgment.  Nothing in the record suggests that Paige set Sorrell's pay based on an age bias, rather than his experience and skill set,

an obviously legitimate business justification.  In fact, there is no evidence in the record of age discrimination at all.  As for retaliation, Sorrell has provided no evidence that he engaged in age-related protected activity, *e.g.*, that he complained internally about a pay disparity based on age or brought an administrative charge to that effect, as he must to show a prima facie claim of retaliation.  *See Moss*, 2020 WL 4001467, at *2.  Rather, he has submitted evidence only that he complained about a disparity in pay based on race.  *See* ECF No. 35-1 (Sorrell Aff.) ¶¶ 20, 43–44; ECF No. 31-17 at 2.  Thus, no reasonable jury could find that Paige discriminated or retaliated against Sorrell based on age, and Paige is entitled to summary judgment on these claims.

### B.      DCHRA Race Discrimination Claim (Count 7)

Sorrell alleges race discrimination under the DCHRA.  D.C. Code § 2-1401.01 *et seq.* But his claim of discrimination under this statute is time-barred.  Under the DCHRA, an employee must sue his employer "within one year of the unlawful discriminatory act, or the discovery thereof . . . ."  D.C. Code § 2-1403.16(a).  That said, the statute of limitations is subject to tolling.  "The timely filing of a complaint with the [District of Columbia Office of Human Rights (DCOHR)] . . . shall toll the running of the statute of limitations while the complaint is pending."  *Id.*  In addition, the DCHRA statute of limitations is also tolled when the employee files a claim with the District of Columbia EEOC office.  *Ellis v Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 78 (D.D.C. 2009).  That is because, under a work-sharing agreement, the District of Columbia EEOC office automatically cross-files claims with the DCOHR.  *Rush v. Fed. Nat'l Mortg. Ass'n*, 208 F. Supp. 3d 1, 11 (D.D.C. 2016), *aff'd*, 707 F. App'x 9 (D.C. Cir. 2017); *see also* 29 C.F.R. § 1601.70 (setting forth procedures by which EEOC enters work-sharing agreements with state agencies).

Sorrell has not shown that he properly followed the above procedures that warrant tolling, and absent tolling, the statute of limitations bars this claim. As Sorrell admits, the last act of alleged discrimination occurred, at the latest, on September 13, 2013, before he joined the apprenticeship program on September 14. ECF No. 35 at 40–41. He did not file this suit until September 8, 2015, nearly two years later. ECF No. 1. Although Sorrell filed an administrative claim, he filed it with the Baltimore EEOC office—not with the DCOHR or District of Columbia EEOC office. The Court is unaware of any evidence that a cross-filing arrangement exists between the Baltimore EEOC office and the DCOHR, or any authority suggesting that a claim filed with that office should be considered filed with the DCOHR. *Cf. Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 93 (D.D.C. 2018) (filing claim with U.S. Department of Health and Human Services did not toll statute of limitations because "statute of limitations is tolled by the filing of a charge with the *D.C. Office of Human Rights*, not just the filing of any administrative charge"). Nor has the plaintiff produced any evidence that cross-filing did in fact occur or that he even requested it. When filling out the EEOC charge form, Sorrell listed only the MCCR as the appropriate state or local agency to be notified. ECF No. 31-17. As a result, because Sorrell's DCHRA race discrimination claim is time-barred, Paige is entitled to summary judgment.[1]

### C.     Title VII and Section 1981 Race Discrimination Claims (Counts 1 and 5)

Title VII prohibits employers from discriminating against employees on the basis of race. 42 U.S.C. § 2000e-16. The plaintiff in a disparate treatment case must show that race was "a motivating factor" in an employer's treatment of the employee. 42 U.S.C. § 2000e-2(m). Similarly, Section 1981 "prohibits private employers from intentionally discriminating on the

---

[1] This analysis also provides an alternative basis for the Court to find that Paige is entitled to summary judgment on Sorrell's DCHRA age discrimination claim.

basis of race with respect to the 'benefits, privileges, terms, and conditions' of employment." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) (quoting 42 U.S.C. § 1981).

When, as here, there is no direct evidence of discrimination, the Court analyzes both Title VII and Section 1981 claims under the *McDonnell Douglas* burden-shifting framework. *See Telesford v. Maryland Provo-I Med. Servs., P.C.*, 204 F. Supp. 3d 120, 129 (D.D.C. 2016). Under that framework, Plaintiff bears the initial burden to establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *White v. Vilsack*, 888 F. Supp. 2d 93, 98 (D.D.C. 2012) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). "Once she has done that, the burden shifts to the defendant, who must 'articulate some legitimate, nondiscriminatory reason' for the adverse action." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Then, "once the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is no longer relevant and thus . . . 'drops out of the picture.'" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993)). In other words, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . .?" *Id.* at 494.

Sorrell asserts that Paige discriminated against him based on his race when it paid him less for performing electrician work than it paid white employees for the same work. ECF No.

35 at 15–16, 19.  But Paige responds that it paid Sorrell a lower, laborer rate, rather than the electrician rate, because he lacked experience and certain skills, so he could not independently perform all the tasks that electricians performed.  ECF No. 31-1 at 17–18.  Paige also says that some of the time, Sorrell performed laborer tasks that involved no electrical skills, although Sorrell disputes that.  ECF No. 39-3 (Carney Tr. A) at 107:8–17.  In any event, in support of this justification, Paige explained its decision-making structure and compensation criteria.  Paige's master electrician, Carney, determines whether an employee should be classified as a laborer or an electrician.  ECF No. 31-7 (Gramlich Aff.) ¶ 4; ECF No. 35-2 (Carney Tr. B) at 65:12–69:19. That determination is "based on such factors as the employee's experience, his/her wage rate at his/her last job, and the needs of Paige," Gramlich Aff. ¶ 3, as well as the worker's ability to perform tasks independently without supervision, ECF No. 31-10 (Carney Aff.) ¶ 2; Carney Tr. B at 20:5–21:6.  Formal schooling, *e.g.*, through an apprenticeship, may warrant a pay increase, but a worker still needs on-the-job training to receive full electrician compensation.  Carney Tr. B at 65:12–69:19.  Generally, an employee needs about four years of on-the-job training to be considered an electrician, but it "depend[s] on the person . . . and how fast they pick[] up on it." *Id.*  An electrician can independently perform various tasks, including reading blueprints and schematics, sizing wire, conduit, and breakers, determining panel and fixture locations, and working with and terminating live wires.  Carney Aff. ¶ 2; Carney Tr. B at 20:5–21:6.  A laborer or apprentice, in contrast, cannot do these tasks without supervision.  Carney Tr. B at 20:5–21:6.

When Sorrell was hired in October 2010, he had no prior electrical work experience, other than "running wire" for one company fifteen years earlier, and so Paige classified him as a laborer, and he earned $15.00 per hour.  ECF No. 35-7 (Brown Tr.) at 27:1–5; ECF No. 35-5 (Sorrell Tr. B) at 39:1–17; ECF No. 35-12 at 2.  At first, Sorrell worked in Paige's construction

division, but moved to its electrical division in May 2011.  Sorrell Aff. ¶¶ 3–5.  In May 2012, he received a raise to $17.00 per hour, which Paige says was to recognize his good work.  Sorrell Aff. ¶ 7; Gramlich Aff. ¶ 8; ECF No. 35-15.  Then, once Sorrell joined the apprenticeship program—at which point he also had two years of experience in the electrical division—Sorrell began paying him a scaled electrician wage set by the apprenticeship program, per the contract that Sorrell and Paige agreed to.  ECF No. 31-8 (Brown Aff.) ¶ 6.  He started at 50% of the electrician rate, which under the contract would increase every six months during the four-year program until he reached 100% of the electrician rate by the end.  *Id.*  During this time, Paige's electricians made between $20.00 and $37.60 per hour.  Def.'s SMF ¶ 24.  Unlike Sorrell, all the electricians had at least four years of electrical work experience before being hired at Paige.  *Id.*  After considering all the above, the Court concludes that Paige has proffered evidence that it compensated Sorrell based on his experience and skill level.  This "qualifications-based justification constitutes a legitimate, nondiscriminatory reason" for a personnel action that shifts the burden back to the plaintiff to show that the reason was pretextual.  *See Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006).

Sorrell makes several arguments why a reasonable jury could find Paige's justification pretextual.  He alleges that (1) Paige's criteria shifted and were subjective; (2) Paige also discriminated against the only other black worker in the electrical division, Ronald Pointer; and (3) Paige's justification is unreasonable, and thus pretextual, because it violated federal wage regulations, at least as applied to work on federal projects.  But as explained below, the Court cannot find that a reasonable jury could conclude, for any of these reasons, that Paige's justification was pretextual and that the compensation it paid Sorrell was grounded in discrimination.

First, Sorrell argues that Paige applied shifting, subjective standards for electrician compensation, which suggests that its qualifications-based justification is pretextual.  ECF No. 35 at 27–29.  More specifically, Sorrell contends that, while Paige classified him as a laborer because he lacked a journeyman license, it classified white employees without journeyman licenses as electricians.  ECF No. 35 at 28–29.  As a result, "the bar was changed and lowered to qualify every White worker who sought to be paid as an electrician while the bar was raised when the two Black workers sought to be classified and paid as electricians."  *Id.* at 3–4.  But Sorrell cites no evidence that Paige ever asserted he was not qualified as an electrician because he lacked a journeyman license.  Rather, Paige has maintained that it compensated him based on experience and skill level—as it did all other employees.  Although Carney determined electrician status case-by-case, Carney Tr. B at 65:12–69:19, and the Court must be skeptical of "imprecise, subjective reasoning" that may be "cover for discrimination," *Figueroa v. Pompeo*, 923 F.3d 1078, 1088-89 (D.C. Cir. 2019), subjective criteria are not per se unlawful, and may still constitute a legitimate business justification where the employer offers a "clear" and "reasonably specific explanation" for how it applies its standards.  *Id.* at 1092.  Paige has done just that.  As already described, all the electricians had at least four years of experience working as electricians before being hired at Paige; Sorrell had none.[2]  Once Sorrell had two years of experience and started the apprenticeship program, though, Paige paid him a percentage of an electrician wage with a path to the full electrician wage by the end of the program.

---

[2] To the extent that Sorrell offers these electricians and their higher wage rates as comparators, the Court also notes that, given this large experience gap, he has "not demonstrate[d] that all of the relevant aspects of his employment situation were nearly identical to those of the other employee."  *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (cleaned up).

Sorrell has not rebutted Paige's showing with any evidence suggesting pretext.  For instance, Sorrell cites no deviation from these criteria for any non-black employees.  In fact, the evidence shows that Paige treated Theodore Larabay and Jonathan Mallonee—two white employees hired without experience working as electricians—the same as Sorrell.  When Paige hired Larabay in 2014, he already had two years of experience working as an electrical apprentice, and Paige paid him $17.00 per hour, the same rate Sorrell received after he had worked in the electrical division for one year and before he had even entered the apprentice program.  ECF No. 31-9 (Toro Aff.) ¶ 2(h).  Like Sorrell, Paige did not consider Larabay an electrician until he completed a four-year IEC apprenticeship program.  Gramlich Aff. ¶ 6. Turning to Mallonee, Paige hired him as a laborer in 2008 at an hourly rate of $13.00 per hour. ECF No. 39-6 (Toro Supp. Aff.) ¶ 5.  Paige raised Mallonee's wage to $16.50 per hour in 2010 and paid him that amount until he left Paige in July 2012.  *Id.*  Meanwhile, Paige paid Sorrell a higher initial rate ($15.00 per hour) and ultimately gave him a raise less than two years into his employment that made his final rate ($17.00 per hour) higher than Mallonee's.

Nor does Sorrell's invocation of Pointer's experience suggest pretext or otherwise provide evidence of discrimination.  *See* ECF No. 35 at 27–29.  Of course, one way a plaintiff may show racial animus is by pointing to the company's treatment of other employees in the same protected class.  *See Holcomb*, 433 F.3d at 900; *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016).  Here, however, Paige's treatment of Pointer tracked its policy of requiring years of full-time electrician experience before hiring an employee as an electrician. In his job application, Pointer stated that he had been an apprentice, but did not list any experience as a full-time electrician.  ECF No. 31-9 at 40.  His starting rate was $17.50 per hour, $0.50 higher than Larabay, who also came to Paige with prior apprentice experience.  ECF No.

35-3 (Pointer Aff.) ¶ 12.  Pointer now suggests that he had additional prior work experience, but his application did not reflect that experience, and in any event, around seven months later, Paige increased Pointer's base salary from $17.50 to $27.50.  ECF No. 31-5 (Brown Tr.) at 43:9–11.  That amount exceeded the wage paid to at least five of Paige's fourteen electricians, four of whom were white and one of whom was Hispanic.  Toro Aff. ¶ 2.[3]

Sorrell raises a final challenge to Paige's justification for his wages on federal government projects.  He argues that Paige's qualifications-based justification is inherently unreasonable, and thus pretextual, because it violates regulations governing wages for federal projects.  ECF No. 35 at 30; ECF No. 43 at 6.  Specifically, he argues, under the Davis-Bacon Act (DBA), 40 U.S.C. § 3141 *et seq.*, and its implementing regulations, the Department of Labor sets wage rates for various classifications of workers, *e.g.*, laborers and electricians, and requires that workers in each category receive the set wage based on "work actually performed, without regard to skill . . . ."  29 C.F.R. § 5.5(a)(1)(i).  Relying on the regulation's requirement that workers be classified and paid based on work "actually performed," Sorrell asserts that Paige's failure to pay him as an electrician violates the DBA and applicable regulations because he in fact performed electrician work.  *See* ECF No. 35 at 30–31, 35–36.  Given that most of Paige's jobs are covered by the DBA, Sorrell reasons, it must have known it could not classify someone doing electrician work as a laborer simply because he had less experience than other employees.

---

[3] Some evidence alludes to a continued dispute over Pointer's wage on federal projects, despite this increase.  Pointer states that he "was still not paid scale wages on scale jobs" after his raise, Pointer Aff. ¶ 16, and Brown testified that, at some point, "Paige realized that he had been functioning as an electrician on some projects and it chose to settle with him," Brown Tr. at 43:16–18.  But Sorrell provides no other information about the circumstances of Pointer's complaint, or how and why it was resolved.  The Court is therefore "not persuaded" that Pointer's complaint "can be used as a proxy [by a reasonable jury] to establish [Paige's] discriminatory animus" when "nothing more is known about the nature, merit, or outcome."  *See Holcomb*, 433 F.3d at 899–900.

*See* ECF No. 43 at 15.  Paige's justification is thus so unreasonable that it must be pretext for discrimination.  *See* ECF No. 35 at 8, 30–31, 35–36 ("An employer who focuses its business on federally funded projects could not reasonably and honestly believe that it could pay a worker less than the applicable DBA work classification.").

This is a creative argument on Sorrell's part, but one that comes up short for several reasons.  First, even if Sorrell's compensation did not comply with the DBA, Sorrell points to no case law supporting the proposition that Paige's violation of another statute, standing alone, supports an inference of pretext or discriminatory motive.  In fact, the limited case law that *does* exist suggests otherwise.  *See, e.g.*, *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608, 612 (1993) (violation of ERISA "would not, without more, violate the ADEA"); *Chavers v. Shinseki*, 667 F. Supp. 2d 116, 131 n.11 (D.D.C. 2009) (failure to comply with veteran preference reporting requirements not "significantly probative" of discrimination because decision-makers believed reporting was not required).  Indeed, Sorrell all but acknowledges this: "Of course, the violation of another employment statute cannot serve as a substitute for evidence of unlawful discrimination . . . ."  ECF No. 43 at 6 n.6.

Second, even if in some instances a statutory violation could serve as evidence of unlawful discrimination, to reach such a conclusion in this case would require the Court first to determine whether Paige violated the DBA.  But those determinations are left to the Department of Labor.  For that reason, in similar situations, courts have declined to go down that path.  *See U.S. ex rel. Windsor v. DynCorp, Inc.*, 895 F. Supp. 844, 849, 851 (E.D. Va. 1995) (granting summary judgment for defendant on False Claims Act count because "it is impossible to determine whether [defendant] submitted a false claim to the government without first determining whether [defendant] actually misclassified an employee [under the DBA] in a given

14

instance[, a]nd the responsibility for resolving such disputes rests not with the courts, but with

the Department of Labor"); *cf. Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d

1220, 1222–23, 1228–29 (D.C. Cir. 1991) (violation of similar wage-setting statute could not be

basis for RICO claim because statute did not provide private right of action, and plaintiff was

merely "fram[ing] the action for such remedy in terms of RICO").

      Third, even if the Court concluded that Paige violated the DBA in some way in how it

compensated Sorrell, on the entire record here, such a violation would not suggest that Paige did

not honestly and reasonably believe in the reasons it gave for compensating him as it did: that he

had less experience and skills than those it classified as electricians.  There is no dispute that

Sorrell did not independently perform all the same tasks as the electricians, even if the parties

disagree as to the exact contours of the work he did.  And that seems self-evident, given that after

Sorrell started as a laborer in the electrical division, Paige paid for him to take electrical courses

and then later sponsored him for the apprenticeship program.  Sorrell himself admits that his

duties evolved "because [he] learned more" and that he was never responsible for reading

schematics, inspecting for code compliance, or leading a job.[4]  Sorrell Tr. A at 90:4–93:19, 94:9–

97:13, 98:6–99:10; *see also* ECF No. 31-6 (Carney Tr. C) at 23:6–17 (testifying that Sorrell did

not size wire, design electric structure, size conduits and breakers, determine panel and fixture

location, or work with live wires).  There is also no dispute that, once Sorrell was an apprentice,

Paige paid him a percentage of (that is, less than) the electrician wage, as set forth in the contract

---

[4] Sorrell contends that some of Paige's electricians could not read schematics and that therefore, this was not a necessary skill to be considered an electrician.  But he offers no evidence beyond his conclusory statement that "[s]ome of the White electricians could not, or would not" read schematics.  Sorrell Aff. ¶ 39; *see also* Pointer Aff. ¶ 38.  He does not identify or provide any details about these employees, including what other electrical skills they possessed, or explain how he knew about the experience and skills of these white electricians.

Sorrell himself signed and as contemplated by the DBA.  *See* 29 C.F.R. 5.5(a)(4)(i).  And as described elsewhere, the way in which Paige treated Sorrell was consistent with how it treated non-black laborers who also sought pathways to full electrician status.  On this record, a violation of the DBA of the sort alleged by Sorrell simply does not suggest that Paige did not believe the reasons it offered or otherwise hint at racial discrimination.  *See George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) (employer may prevail on summary judgment despite "genuine dispute over the objective validity of its reasons, if it were able to demonstrate the absence of a genuine dispute in the record over whether [it] honestly and reasonably believed in those reasons"); *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." (cleaned up)).

For all the above reasons, even viewing the evidence in the light most favorable to Sorrell, no reasonable jury could infer that Paige's proffered, legitimate reason for compensating Sorrell as it did was pretextual or that the actual reason was discriminatory.[5]  Thus Paige, and not Sorrell, is entitled to summary judgment on these claims.[6]

### D.     Title VII, Section 1981, and DCHRA Retaliation Claims (Counts 2, 6, and 7)

Besides prohibiting discrimination on the basis of a protected trait, Title VII bans

---

[5] This analysis also applies as an alternative basis for entering judgment for Paige on Sorrell's DCHRA discrimination claim.  *See Ali v. District of Columbia*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010) (citing *Howard Univ. v. Green*, 652 A.2d 41, 45 & n.3 (D.C. 1994)) (DCHRA claims analyzed using same principles as Title VII).

[6] Sorrell seems to suggest that this is the only basis for his cross-motion.  ECF No. 35 at 1–2; ECF No. 43 at 3 n.3.  To the extent he intended to seek summary judgment in any other respect, however, his motion will also be denied for all the reasons set forth in this opinion.

retaliation against an employee because that employee "'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting § 2000e–3(a)).  Likewise, Section 1981 and the DCHRA prohibit retaliation.  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008); D.C. Code §§ 2-1402.11(a)(1)(A), 2-1402.61(a). Retaliation claims under all three statutes are analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Durant v. D.C. Gov't*, 875 F.3d 685, 696 (D.C. Cir. 2017) (Title VII); *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) (Section 1981); *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010) (citing *Howard Univ. v. Green*, 652 A.2d 41, 45 & n.3 (D.C. 1994)) (DCHRA).  To establish a prima facie case of retaliation under Title VII, Section 1981, or the DCHRA, the plaintiff must show that "[he] engaged in a statutorily protected activity, the employer treated the plaintiff adversely, and a causal connection existed between the two." *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010) (Title VII); *see also Carney*, 151 F.3d at 1095 (Section 1981); *Ali*, 697 F. Supp. 2d at 92 n.6 (DCHRA).  If a prima facie case is established, the burden shifts to the employer to provide a legitimate, nonretaliatory reason for its action.  *Holcomb*, 433 F.3d at 901.  If the employer provides a legitimate, nonretaliatory reason for its conduct, "the burden-shifting framework disappears" and the question becomes "whether a reasonable jury could infer . . . retaliation from all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation."  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (cleaned up).

Paige does not dispute that Sorrell engaged in protected activity by making an internal complaint to Carney and filing a charge of racial discrimination with the EEOC and MCCR.

ECF No. 31-1 at 26–27; *see also Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*,
555 U.S. 271, 276 (2009) ("When an employee communicates to her employer a belief that the
employer has engaged in a form of employment discrimination, that communication virtually
always constitutes the employee's opposition to the activity." (cleaned up)).  Thus, the Court
turns to the other prima facie elements: whether any of the employment actions were adverse and
causally connected to Sorrell's protected activity.

In the retaliation context, an adverse action is one that would "dissuade[] a reasonable
worker from making or supporting a charge of discrimination."  *Burlington*, 548 U.S. at 68.
"Actionable retaliation claims are limited to those where an employer causes '*material*
adversity,' not 'trivial harms.'"  *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007)
(emphasis in original).  "[N]ormally, petty slights, minor annoyances, and simple lack of good
manners will not create such deterrence" that an employee would be dissuaded from engaging in
protected activity.  *Burlington*, 548 U.S. at 68 (Title VII); *see also Arafi v. Mandarin Oriental*,
867 F. Supp. 2d 66, 76 (D.D.C. 2012) (Section 1981); *Ali*, 697 F. Supp. 2d at 92 n.6 (DCHRA).

Sorrell alleges three supposedly adverse actions: Paige's failure to provide him with his
electrical work history upon request, its assigning him to less lucrative jobs in Baltimore, and its
subjecting him to frequent drug testing.  The Court considers each in turn and concludes that no
reasonable jury could find that any of these constituted adverse actions or were causally
connected to his protected activity.

### 1.    Failure to Provide Employment Documentation

Sorrell first contends that Paige retaliated against him by failing to send him
documentation of his electrical work history when he requested it.  ECF No. 35 at 39.  In mid-to-
late July 2014, Sorrell complained to Carney about his wages and expressed that he believed he
was being discriminated against because of his race.  Sorrell Tr. A at 224:7–27:21.  Sorrell then

18

sent Gramlich a letter dated July 28, 2014, stating that Carney had denied Sorrell's multiple requests for a pay increase and asking to schedule a meeting to discuss the issue.  ECF No. 31-15 at 3.  Gramlich responded two days later, stating that Paige's accounting firm was reviewing his wage rate: "If there are any discrepancies you will receive restitution.  We appreciate that you stepped up and entered the apprentice program.  Keep up the good work and we will get this issue resolved."  ECF No. 31-13 at 4.  Sorrell then resigned from Paige a few weeks later, on August 15.  A few days after that, he requested his electrical work history, so he could receive a higher wage at his next job and take the journeyman electrician exam (which requires 8,000 hours or four years of qualifying electrical work supervised by a master electrician).  Sorrell Tr. A at 220:16–19, 251:1–21; Toro Aff. ¶ 5; Sorrell Aff. ¶ 33; Brown Aff. ¶ 7.  DeMarr, who took Sorrell's call requesting the documentation, emailed Paige's outside accountant, Brown, that same day about the request, asking how she should respond.  ECF No. 31-16 at 2.  Brown responded that the request could wait until after a meeting he had scheduled with Paige later that week.  ECF No. 31-16 at 2.  He believes he then told Paige to direct Sorrell to IEC because Sorrell had to report his on-the-job electrical training hours to IEC, but Paige did not keep track of this information.  Brown Aff. ¶ 7.

About a week after his request, Sorrell filed a complaint with the EEOC and MCCR, alleging race discrimination.[7]  ECF No. 31-17.  He never ended up receiving documentation of his electrical work experience from Paige, although he asserts that Paige provided work histories to white workers who requested them.  Sorrell Aff. ¶ 33.  Sorrell did eventually receive

---

[7] The Court notes that Sorrell does not appear to have submitted evidence that he exhausted his administrative remedies for his Title VII retaliation claim.  Failure to exhaust would be another basis for summary judgment on Paige's behalf, although Paige did not raise this affirmative defense.

documents from IEC reflecting his work as an apprentice, Sorrell Tr. A at 248:4–11; Sorrell Aff. ¶ 33, but still alleges that he was paid $3.00 less per hour at his new job without the documentation he requested from Paige.  Sorrell Aff. ¶ 33.  Thus, he claims, Paige retaliated against him for complaining to Carney and Gramlich about discrimination and later filing an administrative charge by failing to send him the requested documents.  ECF No. 35 at 39.  For its part, Paige says that it never sent Sorrell the documentation either because the request just slipped through the cracks or because Paige determined that the request was more properly directed to IEC.  Brown Aff. ¶ 7.

Sorrell's claim fails for two reasons.  In the first instance, Sorrell has not shown that Paige's failure to provide the requested documents was an adverse action.  Although this failure might be considered one if it affected Sorrell's compensation, *see Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (adverse actions typically "involve[] a significant change in employment status, such as . . . a decision causing significant change in benefits" (cleaned up)), the only evidence offered by Sorrell that this happened is his bald assertion that he "was paid $3.00 less per hour at my new job than I would have been paid if Paige had produced the verification I had requested."  Sorrell Aff. ¶ 33.  But Sorrell has "not provide[d] any evidence, beyond his own conclusory allegations," that Paige's inaction affected his compensation or otherwise "produce[d] an injury or harm."  *Durant*, 875 F.3d at 698 (employer's refusal to assign plaintiff a government vehicle not adverse action because plaintiff put forth no evidence of harm) (quoting *Burlington*, 548 U.S. at 67).  Indeed, it is hard to see how Sorrell could have been harmed, given that he received documentation of his apprenticeship work experience from IEC and Paige says that, at most, it would have simply confirmed that information because before his apprenticeship Paige had employed Sorrell as a laborer and it did not record any "electrical"

work experience for him.  *See* ECF No. 31-1 at 27–28; Brown Aff. ¶ 7; ECF No. 35-4 (Gramlich

Tr. A) at 27:13–29:2.  Thus, Paige's failure to send the documents at issue, without a

demonstration of actual harm, is merely "trivial," the sort of "minor annoyance[]" that would not

deter a reasonable employee from engaging in protected activity.  *Bridgeforth*, 721 F.3d at 663

(cleaned up).  Moreover, that Sorrell filed an administrative complaint two weeks after not

receiving a response to his request underscores this conclusion—Sorrell was not in fact deterred

from pursuing his claim of discrimination.  *See Gray v. Foxx*, 637 F. App'x 603, 608 (D.C. Cir.

2015) (plaintiff's filing of EEO complaint after alleged adverse action "undercut[] any argument

that a reasonable worker would be dissuaded from filing a charge of discrimination").

Even if Sorrell could clear that hurdle, though, Paige offered a legitimate, nonretaliatory

reason for the inaction—it either forgot or determined the request was more appropriately

directed elsewhere—and Sorrell has proffered no evidence that these reasons were pretextual or

not genuinely held by Paige.  For example, Sorrell has provided no evidence that Paige ever

affirmatively refused to provide the documents.  He does not even say he ever followed up on his

request when he did not receive an immediate answer from Paige.  He concedes he got his

apprenticeship records from IEC.  And although he attests that "Paige produced such verification

for White electricians who requested it," Sorrell Aff. ¶ 33, his conclusory affidavit does not

explain the circumstances in which any other employee requested and received such

documentation or how he knows this happened, *see Camara v. Mastro's Rests. LLC*, 952 F.3d

372, 374–75 (D.C. Cir. 2020) ("[A]n 'affidavit or declaration used to support or oppose a

[summary judgment] motion must be made on personal knowledge' and 'set out facts that would

be admissible in evidence.'") (quoting Fed. R. Civ. P. 56(c)(4)).  And he does not point to any

evidence that Paige would have had records (beyond the apprenticeship records) showing that

someone like him did electrical work, given that he was employed as a laborer and not an electrician.  Finally, he relies on the temporal proximity between his complaints of discrimination and Paige's failure to provide the documentation, ECF No. 35 at 39, but "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanation[] [is] genuine." *Durant*, 875 F.3d at 700 (cleaned up).

### 2.    Termination Threat

Sorrell also asserts that Paige retaliated against him when Carney threatened him, "go over top of my head and you'll no longer work here," after Sorrell complained about his pay.  Sorrell Tr. B at 237:3–239:1.  But Sorrell *did* go over Carney's head to complain to Gramlich in August 2014, thereby "undercut[ting] any argument that a reasonable worker would be dissuaded from filing a charge of discrimination" by the alleged threat.  *See Gray*, 637 F. App'x at 608.  And as a result, Paige did not fire him, or take any other action against him. Thus, Carney's comment (assuming it happened) would not constitute an adverse action, because unrealized threats seldom qualify as such.  "A long line of cases from this Circuit and others have held that threats, revoked disciplinary plans, and other such ultimately unconsummated actions are not materially adverse for purposes of retaliation claims."  *McNair v. District of Columbia*, 903 F. Supp. 2d 71, 75–76 (D.D.C. 2012) (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008)) (letter threatening termination proceedings was not adverse action where plaintiff later kept job for two years and resigned voluntarily); *see also Berger v. Iron Workers Reinforced Rodmen Loc. 201*, 843 F.2d 1395, 1424 (D.C. Cir. 1988) (threat to "make it hard" on plaintiffs who filed lawsuit was "probative of retaliatory animus" but did not constitute adverse action because it "was not put into effect through any action against" plaintiffs).

Moreover, that the employer "went out of [its] way to accommodate" the plaintiff in this case bolsters the Court's conclusion on this point.  *See Guajacq v. EDF, Inc.*, 601 F.3d 565, 578

(D.C. Cir. 2010) (statement that "[y]our career is dead . . . if you file the claim" not adverse action where employer "indulged [plaintiff] at every turn" despite "increasing insubordination and refusal to consider any future employment decision that did not meet her precise demands"). On the record here, Paige supported Sorrell in many ways, including giving him a raise to recognize his good work, reimbursing him for the cost of three electrical courses in 2013, encouraging him to apply for the apprenticeship program, and sponsoring his application, thereby offering him a pathway to full pay as an electrician. Gramlich Aff. ¶ 8–9; Sorrell Tr. A at 132:1–38:3; ECF No. 31-4 (Gramlich Tr. B) at 18:12–19:5. Thus, Carney's alleged threat was not only unfulfilled, but not especially credible in the first place. Sorrell has failed to carry his burden to show that it would have deterred a reasonable employee from complaining of discrimination.

### 3. Assignment to Lower-Paying Jobs in Baltimore

Sorrell argues that Carney assigned him and Pointer to lower-paying jobs near Baltimore and further from their homes after they complained about their pay. ECF No. 35 at 21–22. Paige responds that Carney assigned employees to jobs based on "who is available and who can do the work." ECF No. 39 at 26; ECF 39-5 (Carney Supp. Aff.) ¶ 2. In any event, to show that he was harmed, Sorrell has offered no evidence of what other projects Carney could have given him, and how much more he would have earned. *Durant*, 875 F.3d at 698 (plaintiff "did not provide any evidence, beyond his own conclusory allegations," that personnel action "'produce[d] an injury or harm'"). And even if he had made such a showing with competent evidence, Sorrell has not put forth evidence to suggest the assignments were retaliatory. He has not even proffered a timeline to assert a temporal connection between his protected activity and these alleged adverse actions, let alone provided any "positive evidence beyond mere proximity," as required to survive summary judgment. *See Durant*, 875 F.3d at 700 (cleaned up).

### 4.    Frequent Drug Testing

Sorrell contends that he and Pointer faced drug testing more often than non-black employees at Paige.  ECF No. 35 at 22.  Even assuming this kind of increased testing could make out an adverse action, Sorrell offers no evidence that this happened other than Pointer's conclusory statement.  Pointer Aff. ¶ 35.  It is altogether unclear from Pointer's affidavit how often Sorrell and Pointer faced drug testing or how often white employees faced testing— information the Court would need to assess whether Sorrell suffered any materially adverse harm.  *See Durant*, 875 F.3d at 698.[8]  It is also unclear how Pointer knew the details of the testing regime applied to other employees.  *See Camara*, 952 F.3d at 374–75.  And even if Sorrell offered competent evidence on these points, he has not cited any evidence connecting the increased testing to his protected activity, as required to make out a retaliation claim. *See Durant*, 875 F.3d at 700 (cleaned up).

## IV.    Conclusion

For all the above reasons, the Court will grant Paige's Motion for Summary Judgment, and deny Sorrell's Partial Cross-Motion for Summary Judgment.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 27, 2021

---

[8] Sorrell appears to argue that the assignments to Baltimore and more frequent drug testing also constitute discrimination.  *See* ECF No. 35 at 38; ECF No. 43 at 18.  But for the same reasons as to the retaliation claims, he has not established that these acts constitute adverse actions for purposes of discrimination claims, which have a higher standard for material adversity.  *See Moss*, 2020 WL 4001467, at *10.